UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DAVID AND SUSAN RIDGEWAY                      CIVIL ACTION

VERSUS                                        NO: 09-2794

PFIZER, INC.                                  SECTION R

**ORDER AND REASONS**

Plaintiffs David and Susan Ridgeway bring this products-liability action against defendant Pfizer, Inc., on the grounds that Viagra — a prescription drug produced by Pfizer to treat erectile dysfunction — caused Mr. Ridgeway to suffer injuries. Pfizer now moves for summary judgment (R. Doc. 15). For the following reasons, the motion is GRANTED.

**I. Background**

In 1998, Mr. Ridgeway was prescribed Viagra to treat his erectile dysfunction, and he took the drug regularly until February 16, 2008.[1] On that day, the 63-year-old Mr. Ridgeway awoke, took a dose of Viagra, had sexual intercourse with his wife, and shortly thereafter suffered a hemorrhagic stroke.[2] As

---

[1] Viagra is the trade name of the prescription pharmaceutical produced by Pfizer; it also goes by the name of "sildenafil."

[2] The deponents in this matter refer to Mr. Ridgeway's injury as a stroke, a hemorrhagic stroke, or a cerebral

1

a result, Mr. Ridgeway required immediate medical attention and, among other effects, now has reduced speech and motor skills and is also confined to a wheelchair. According to the evidence, the resulting medical expenses have been considerable.

The Ridgeways brought this suit in federal court in February of 2009, alleging theories of negligence, defective design, manufacturing defects, failure to warn, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, consumer fraud, and loss of consortium. Their prayer for damages includes punitive damages.

Pfizer now moves for summary judgment, contending that the Ridgeways lack medical evidence that Viagra was a cause of Mr. Ridgeway's stroke. Plaintiffs, in response, contend that the doctrine of *res ipsa loquitur* is sufficient to defeat summary judgment. The Court rules as follows.

---

hemorrhage, and one deponent specified that it was a cerebral hemorrhage in the basal ganglia. *See, e.g.,* R. Doc. 15-8 at 14 (deposition of Dr. Craig Ehrensing). In their opposition, plaintiffs discuss the relationship between Viagra and hemorrhages caused by arteriovenous malformations, which are congenital malformations of veins and arteries. They cite to nothing, however, to suggest that Mr. Ridgeway suffered from any arteriovenous malformations, in his brain or elsewhere. Furthermore, Dr. Frank Oser, Mr. Ridgeway's neurologist, specifically noted that Mr. Ridgeway did not have any vascular malformations. R. Doc. 15-9 at 5-6. For the sake of simplicity, therefore, the Court will refer to the injury simply as a stroke.

**II. Legal Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[4] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[5]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[6] The

---

[3] FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[4] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

[5] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[6] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[7]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[8] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[9] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[10]

**III. Analysis**

*A. Louisiana Products Liability Act Requirements*

Because plaintiffs' allege that Mr. Ridgeway's injury was

---

[7] *Id.* at 1265.

[8] *See Celotex*, 477 U.S. at 325.

[9] *See id.* at 324.

[10] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

4

caused by Pfizer's products, the Louisiana Products Liability Act
("LPLA") controls this case.[11]  Under the LPLA, a plaintiff must
prove four elements to establish liability for injury-causing
products: (1) that the defendant is the manufacturer of the
product, (2) that the plaintiff's damage was proximately caused
by one of the product's characteristics, (3) that such
characteristic rendered the product unreasonably dangerous, and
(4) that the plaintiff's damage arose from a reasonably
anticipated use of the product.[12]

 The LPLA "establishes the exclusive theories of liability
for manufacturers for damage caused by their products.  A
claimant may not recover from a manufacturer for damage caused by
a product on the basis of any theory of liability that is not set
forth in [the Act]."[13]  The Act's exclusive list of liability
theories includes four specific ways in which a product may be
"unreasonably dangerous."  A product might be unreasonably
dangerous in construction or composition, unreasonably dangerous
in design, unreasonably dangerous on account of an inadequate
warning, or unreasonably dangerous for failure to conform to an

---

[11] *See Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir. 1995) (holding that the LPLA applies to products-liability actions that accrued on or after September 1, 1988).

[12] *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002); *see also* LA. REV. STAT. § 9:2800.54(A).

[13] LA. REV. STAT. § 9:2800.52.

express warranty.[14] Plaintiffs assert other theories of liability, which include theories of negligence and intentional torts. Because these theories fall outside the purview of the LPLA, however, they must be dismissed.[15]

*B. Proof of Causation*

Pfizer's central contention with respect to plaintiffs viable theories is that plaintiffs have no evidence to prove a critical element of their claim under the LPLA: that Viagra caused Mr. Ridgeway's stroke. In order to prevail on their claim, plaintiffs "must prove causation by a preponderance of the evidence. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more

---

[14] LA. REV. STAT. § 9:2800.52-58. There is case law to suggest that portions of the LPLA are preempted by federal law. *See, e.g., Green v. BDI Pharms.*, 803 So. 2d 68, 74-75 (La. Ct. App. 2001). These issues do not concern the issues before the Court.

[15] *Stahl*, 283 F.3d at 261 ("negligence, strict liability, and breach of express warranty are not available as theories of liability against a manufacturer, independent from the LPLA"); *see also id.* at 262 ("there is no 'intentional acts' exception to the exclusive remedy provision of the LPLA"); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (lower court ruling incorporated as opinion) (noting that negligence and breach of express or implied warranty are not available under the LPLA); *Brown v. R.J. Reynolds Tobacco Co.*, 852 F. Supp. 8, 9 & n.1 (E.D. La. 1994) (noting that claims of fraudulent misrepresentation, concealment, and conspiracy had been dismissed as falling outside scope of the LPLA), *aff'd*, 52 F.3d 524 (5th Cir. 1995).

probable than not that the subsequent injuries were caused by the accident."[16] Medical causation has two components: general causation, which establishes that a substance has the capability of causing the injury or disorder in humans, and specific causation, which focuses upon whether the substance caused a particular injury to a particular individual.[17] "An inability to establish specific causation is fatal to Plaintiff's claim."[18]

Pfizer points out that none of the physicians who treated Mr. Ridgeway expressed a belief that Viagra is either capable of causing stroke or caused Mr. Ridgeway's stroke in particular. In fact, several of his doctors expressed doubt that Viagra was the cause of the injury. For example, Dr. Jules Deutsch, one of Mr. Ridgeway's physicians who originally prescribed him Viagra, testified that at the time that Mr. Ridgeway stopped seeing him in 2002, there was "no way" that he would think that Viagra caused the stroke. He added that "there's no cardiologist, urologist, neurosurgeon with credentials and any integrity that would blame Viagra for him having a stroke. That's totally

---

[16] *Maranto v. Goodyear Tire & Rubber Co.*, 650 So. 2d 757, 759 (La. 1995).

[17] *Pick v. Am. Med. Sys., Inc.*, 958 F. Supp. 1151, 1164 (E.D. La. 1997).

[18] *Kemp v. Metabolife Int'l, Inc.*, No. 00-3513, 2004 WL 2095618, at *3 (E.D. La. Sept. 13, 2004).

7

ridiculous, up to 2002. That's nonsense."[19] Dr. Deutsch acknowledged that changes in Mr. Ridgeway's circumstances between 2002 and 2008 may have changed his answer, but that "this is a nonsense lawsuit if it was based on information up to 2002. And it shouldn't take up the time of the courts or a jury or doctors because we're all too busy."[20] Dr. Deutsch further indicated that he was "not aware of any information that says that the drug itself, with not [sic] other medications, preexisting disease, causes a stroke."[21]

In addition, Dr. Craig Ehrensing, another of Mr. Ridgeway's treating physicians, testified that he was not aware of any evidence that would indicate that Viagra can cause strokes. "There's no path or physiological mechanism that I'm aware of that would be associated with Viagra, or that class of medicine."[22] Finally, Dr. Howard Woo, Mr. Ridgeway's urologist, testified that he did not know what caused Mr. Ridgeway's stroke, but that he "[didn't] believe that the Viagra is necessarily precipitated, quote/unquote, stroke, whatever the cause of the stroke may be."[23] Dr. Woo further testified that he was not

---

[19] R. Doc. 15-7 at 20.

[20] *Id.* at 21.

[21] *Id.*

[22] R. Doc. 15-8 at 14.

[23] R. Doc. 15-10 at 18.

aware of any physiological mechanism under which Viagra could cause strokes, and he was not aware of any medical literature that would establish a causal link between the two.[24] None of this testimony is disputed.

Pfizer concludes that plaintiffs have no witnesses or evidence to support a finding that Viagra is capable of causing stroke, or that Mr. Ridgeway's taking of Viagra caused his stroke. It therefore contends that summary judgment is appropriate. In response, plaintiffs submit no evidence and point to no facts. Instead, they have submitted a memorandum suggesting that they have not submitted any evidence or testimony on the issue of causation "because this injury is so new there has not been sufficient scientific testing to establish the causality of the use of sildenafil (Viagra) and a hemorrhage."[25] They further contend that because Mr. Ridgeway was in good health before his stroke and the only actions he took on the day in question were to take a Viagra and to have intercourse, the doctrine of *res ipsa loquitur* is sufficient to defeat summary judgment.

*C.* Res Ipsa Loquitur

*Res ipsa loquitur* "is a rule of circumstantial evidence that

---

[24] *Id.*

[25] R. Doc. 20 at 2.

9

infers negligence on the part of the defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses.  The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence."[26]  The doctrine is available in the context of products-liability actions.[27]

The mere mention of *res ipsa loquitur*, however, does not relieve a plaintiff of the burden imposed by the law.  Although the doctrine allows an implication of negligence to arise from the circumstances, "the doctrine does not dispense with the rule that negligence must be proved."[28]  The doctrine is applicable when plaintiff's accident is best explained by defendant's negligence and not some other factor.  "The basis on which this conclusion is drawn is usually knowledge common to the community as a whole, although in cases such as medical malpractice expert testimony may be used to establish this principle."[29]

---

[26] *Montgomery v. Opelousas Gen. Hosp.*, 540 So. 2d 312, 319 (La. 1989).

[27] *See Lawson v. Mitsubishi Motor Sales of Am.*, 938 So. 2d 35, 49 (La. 2006).

[28] *Montgomery*, 540 So. 2d at 319.

[29] *Cangelosi v. Our Lady of the Lake Regional Med. Cent.*, 564 So. 2d 654, 666 (La. 1990).

Furthermore, "[a]pplication of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence."[30] Plaintiffs bear the burden of excluding reasonable explanations for the accident other than defendant's negligence.[31]

First, plaintiffs' own admission that their theory of causation, and thus liability, is "speculative" seriously undercuts the argument that *res ipsa loquitur* should apply. Again, that doctrine allows an inference of negligence to arise when the circumstances indicate that the injury does not typically occur in the absence of negligence. Such circumstances must be "so unusual" that an inference of negligence is warranted.[32] The doctrine is applicable when, for example, a patient emerges from surgery with new injuries he did not enter with,[33] when a large and intense fire begins in a closed restaurant kitchen that likely contained combustible

---

[30] *Id.*

[31] *See Lawson*, 938 So. 2d at 50; *see also Marks v. Dupre Transport, Inc.*, No. 02-2702, 2002 WL 31319940, at *3 (E.D. La. Oct 15, 2002); *Cangelosi*, 564 So. 2d at 666.

[32] *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 966 So. 2d 36, 44 (La. 2007).

[33] *See McCann v. Baton Rouge Gen. Hosp.*, 276 So. 2d 259, 260-61 (La. 1973).

substances,[34] or when a barrel rolls out of a warehouse and strikes a pedestrian on the street below.[35]  Here, Mr. Ridgeway took Viagra regularly over the course of a decade and then on one occasion suffered a relatively common medical injury with no clear association with Viagra.  These circumstances are hardly unusual, and it is not the kind of accident that does not normally occur in the absence of negligence.

Second, in order to take advantage of the doctrine of *res ipsa loquitur* plaintiffs must exclude other possible causes of Mr. Ridgeway's injury or to demonstrate that other explanations are not equally reasonable.  They have not, however, even attempted to do this, and they have thus not carried their burden of demonstrating that the application of doctrine of *res ipsa loquitur* is appropriate.  For example, the medical testimony provided by Mr. Ridgeway's physicians establishes that he had a history of hypertension.[36]  Although there appears to be some disagreement about how serious his hypertension was and whether

---

[34] *See Boudreaux v. Am. Ins. Co.*, 264 So. 2d 621, 637 (La. 1972).

[35] *See Byrne v. Boadle*, (1863) 2 H. & C. 722, 159 Eng. Rep. 299 (Ct. Exch.).

[36] *See* R. Doc. 15-8 at 6 (statement of Dr. Craig Ehrensing agreeing that "Mr. Ridgeway had a history of elevated blood pressure recordings"); *see also* R. Doc. 15-11 at 7 (statement of Dr. Stacey Vial agreeing that Mr. Ridgeway had a history of high blood pressure); R. Doc. 15-7 at 17 (statement of Dr. Jules Deutsch discussing Mr. Ridgeway's high blood pressure).

12

or not it abated at certain points, the deposition testimony — including that of Mrs. Ridgeway — establishes that Mr. Ridgeway suffered from some form of mild or borderline hypertension.[37] Dr. Ehrensing provided further testimony agreeing that "hypertension is the leading cause of hemorrhagic stroke."[38] Dr. Vial also testified that hypertension is a risk factor for stroke.[39]

Again, in order for *res ipsa loquitur* to apply, plaintiffs must exclude all possible causes of Mr. Ridgeway's injury that are equally or more reasonable than defendant's fault.[40] Defendants have presented evidence that Mr. Ridgeway suffered from a serious risk factor of hemorrhagic stroke, but plaintiffs have not even attempted to exclude this as a potential cause of his injury. Furthermore, any doubt that *res ipsa loquitur* has no application to this case is eliminated by plaintiff's opposition brief. There, they state that medical evidence is unavailable

---

[37] *See* R. Doc. 15-9 at 5-6 (statements of Dr. Frank Oser that Mr. Ridgeway did not have high blood pressure when he saw him, but that records indicated that he likely had "borderline" or "mild" hypertension); R. Doc. 15-6 at 17 (statement of Susan Ridgeway that her husband did not have high blood pressure, but that it was "borderline").

[38] R. Doc. 15-8 at 7; *see also id.* at 14 (noting that Mr. Ridgeway suffered from a basal ganglia stroke, and that bleeding related to hypertension are "[v]ery typically" found in the basal ganglia).

[39] R. Doc. 15-11 at 5.

[40] *Cangelosi*, 564 So. 2d at 666.

13

"due to the fact that Plaintiff's injury is one that is so new in nature and in mechanism of action there has [sic] not been studies completed."[41] Pfizer's fault cannot be presumed from the circumstances when plaintiffs themselves admit that their theory of causation is so novel that no one has yet had a chance to study it.

A plaintiff in a products-liability action who has no evidence of causation may not defeat summary judgment with a mere invocation of the doctrine of *res ipsa loquitur*, virtually unencumbered by a demonstration of any predicate for its applicability. Because the doctrine does not apply, this is simply a case in which plaintiffs have no evidence of causation. Opinions of courts both in this District as well as in the Fifth Circuit have held that summary judgment is appropriate when a plaintiff fails to produce any evidence that might demonstrate causation.[42] Pfizer is therefore entitled to summary judgment in this matter.

---

[41] R. Doc. 20 at 3.

[42] *See, e.g., Hebert v. Miles Pharms.*, No. 92-4290, 1994 WL 10184, at *3 (E.D. La. Jan. 13, 1994) ("this Court finds that there is a complete absence of proof of medical causation or fault on the part of defendant manufacturer Lilly, both essential elements of [plaintiff's] claim upon which she bears the burden of proof at trial on the merits. Indeed, the absence of any such proof renders all other factual disputes immaterial"); *Stahl*, 283 F.3d at 263 (summary judgment appropriate when plaintiff adduced no evidence to demonstrate that pharmaceutical was unreasonably dangerous in construction or composition).

14

**IV. Conclusion**

For the foregoing reasons, Pfizer's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this __27th__ day of April, 2010.

_____
**SARAH S. VANCE
UNITED STATES DISTRICT JUDGE**